---

### *In re* KEENAN'S ESTATE.

#### (*Surrogate's Court, New York County.* January 23, 1889.)

DESCENT AND DISTRIBUTION—INHERITANCE TAX—APPRAISAL.

The New York collateral inheritance tax act, (Laws 1885, c. 483, § 8,) provides that every tax should be paid to the treasurer of the "proper county." Section 17 provides that when the treasurer of any county has reason to believe that any tax is due he shall notify the district attorney of the "proper county," etc. *Held*, that the "proper county" is the county of the surrogate first properly acquiring jurisdiction; and, even if the property of a decedent is situated in more than one county, the appraiser appointed by such surrogate may appraise it all.

On motion to confirm appraiser's report.

The collateral inheritance tax act, certain sections of which are construed in the opinion, is found in Laws N. Y. 1885, c. 483.

*Graham McAdam,* for the comptroller. *John Brice,* for the estate.

RANSOM, S. Counsel for the estate claims that the appraiser erred in reporting in bulk the value of the interest of decedent in two pieces of real estate,—one situated in New York city, the other in Brooklyn,—and contends that the value of each should have been reported separately. He bases his argument upon sections 8, 17, and 23. Section 8 provides that every tax due and payable under the act should be paid to the treasurer of the "proper county," or, in the city and county of New York, to the comptroller thereof; and counsel contends that the words "proper county" must mean the county where the property liable to tax is situate. Section 17 provides that whenever the treasurer of any county has reason to believe that any tax is due and unpaid, he shall notify the district attorney of the "proper county" to proceed. Under this section he claims that the district attorney of Kings would be bound to bring proceedings for the collection of the tax, though it had been paid to the comptroller of New York county. Section 23 provides for the procuring a receipt from the treasurer of the county, designating on what real property the tax has been paid, and for the recordation of such receipt in the clerk's office of the county where the property is situate. Counsel contends that the order of the surrogate, confirming the report as it now stands, would have to direct the payment of the entire tax to the comptroller

of the county of New York, notwithstanding the fact that the property is situated partly in Kings county, and would thus give to the comptroller of this county a commission due the county treasurer of Kings, and claims that the only way to protect this estate against claims for commissions due the county treasurer of Kings, and to afford protection to a future purchaser, will be to amend the report of the appraiser by separating the value of the two pieces of property, and assessing each one. Counsel for the comptroller asks for the confirmation of the report, and claims that the words "proper county" relate to the county of the surrogate first acquiring jurisdiction under section 15, and argues that under this section the surrogate to whom the first application for the appointment of an appraiser is made has full jurisdiction, and that it was not the intent of the legislature to impose on any surrogate the task of investigating what property the estate of decedent consisted of, and where such property was situated, before appointing such appraiser, and calls attention to three cases where real estate in counties other than New York was appraised by the appraiser appointed in this county, and the reports confirmed. The appraiser has assessed the interest in all the real property of which the decedent was seised at her death, and calls attention to its being situated both in New York and Kings counties, and reports the value of both as aggregating $2,246.41.

There does not appear to be any difficulty in this matter. The words "proper county" evidently refer to the county of the surrogate first properly acquiring jurisdiction; and the surrogate of that county retains such jurisdiction throughout all proceedings, even should there be real estate in every county in the state. The act expressly provides for the necessary traveling expenses of the appraiser. By obtaining a receipt from the comptroller of this county and filing it in the clerk's office of Kings county, it is conclusively shown that the tax upon the real estate there has been paid, thus releasing the estate from any lien upon it on account of said tax, and effectually preventing the district attorney of Kings county from successfully prosecuting any proceedings for its collection. By section 17 it is provided that if the district attorney have probable cause to believe a tax is due and unpaid, he shall proceed, etc. A complete answer to all such proceedings would be production from the county clerk's office of a certified copy of the receipt of the comptroller. That would also protect the purchaser. The question of commissions between the county treasurer of Kings and the comptroller of New York does not enter into this matter at all. The surrogate, in confirming the report of the appraiser, simply assesses and fixes the tax, but does not order it to be paid to the comptroller of New York county or any one else. An order should be entered confirming the report of the appraiser, and assessing and fixing the tax.